

*Kim R. Blackseth, Interests, Inc.*
*310 17th Street*
*Oakland, CA 94612*

*Phone 510-839-1760      Fax 510-839-2085*

September 21, 2007

Tom Stewart
Law Offices
369 Blue Oak Lane
Clayton, CA 94517

Re:    Pavilion Bar, 1508 Kirker Pass, Clayton, CA- Disabled Access Report

Dear Mr. Stewart

At your request, on or about September 12, 2007, we reviewed the subject restaurant facility in Clayton, CA, for compliance with State of California's <u>Title 24, Building Code (CBC)</u>, California Amendments and the federal <u>Americans with Disabilities Act of 1990 (ADA)</u>, as they relate to physical disabled access. A brief discussion of these requirements follows:

**California Building Code**

The first California access laws for newly constructed buildings (Health and Safety Code 19955) were passed in 1969.  In 1971, Heath and Safety Code 19959 was passed that required all alterations, repairs and additions be accessible in public accommodations.

From the enactment of sections 19955 and 19959, to 1982 the ANSI 117.1, 1961 requirements were the standard to implement the access requirements.  These were 6 pages and contained very limited scoping provisions.

In 1982, the California Building Code Title 24 (CBC Title 24) went into effect replacing the 1961 ANSI standards.  The CBC Title 24 accessibility standards were revised in 1984, 1986, 1987, 1989, 1994, 1996 and 1998. The 2001 CBC became effective on November 1, 2002 for all alterations and new construction.

This facilities obligation to comply with the California Building Code (CBC) depends largely on its construction date and alteration history. If an alteration (as defined in the CBC) is performed, these facilities have to comply with the edition of the CBC in effect on the date of their last alteration. This obligation would include the functional area renovated, the path of travel to them and the sanitary facilities that support them, not the entire facility.

If an alteration is performed, the date of those renovations reveals the applicable editions of the State Building Code that will determine what additional access features are required.

**The Americans with Disabilities Act**

The ADA prohibits discrimination on the basis of disability in employment, programs and services provided by state and local governments, goods and services provided by private companies, and in commercial facilities.

The ADA was signed into law on July 26, 1990. It contains requirements for new construction, for alterations or renovations to buildings and facilities, and for improving access to existing facilities of private companies providing goods or services to the public and requires reasonable modifications of policies and practices that may be discriminatory

The Americans with Disabilities Act (Public Law 101-336), has five titles, each of which defines and prohibits discrimination on the basis of disability within a specific arena:

- Title I - Employment
- Title II - Public Services
    - Subtitle A, covers state and local governments generally;
    - Subtitle B applies to most public transportation systems.
    - Title III - Public Accommodations and operated by Private Entities
- Title IV - Telecommunications
- Title V - Miscellaneous Provisions

This facility is a Public Accommodation, as defined by the ADA. And as such, the elements in Title III apply. Regulations implementing the general provisions of titles III of the ADA - those that cover buildings and facilities - were published in the Federal Register (FR) on July 26, 1991.

- Part II - Architectural and Transportation Barriers Compliance Board - 36 CFR Part 1191 - Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities; Final Guidelines (**this is ADAAG**);

- Part III - Department of Justice, Office of the Attorney General - 28 CFR Part 36 - Nondiscrimination by Public Accommodations and in Commercial Facilities; Final Rule (this is the title III regulation; subpart C contains requirements for existing facilities; subpart D covers new construction and alterations, incorporating ADAAG as Appendix A).

ADAAG was developed for New Construction and Alterations. Existing facilities not otherwise being altered are subject to requirements specified in the DOJ regulations.  Title III entities must pursue barrier removal - or alternatives - in existing places of public accommodation. Broadly viewed, ADA implementing regulations outline a hierarchy of obligations:

•    New construction must be fully accessible, in compliance with applicable provisions of ADAAG;

•    Alterations must observe ADAAG new construction criteria where technically feasible; less stringent technical specifications may be applied where technical unfeasibility is encountered; alterations to primary function areas carry an additional obligation to improve the path of travel to the altered area;

•    Existing facilities must achieve a level of usability that balances user needs, the constraints of existing conditions, and the resources available for remedial work.

**Note:  As of July 23, 2004, the Architectural and Transportation Barriers Compliance Board (ATBCB) released a new version of ADAAG. While we now have new ADAAG scoping and technical standards, they will not be implemented until the DOJ adopts them and provides direction on their use, i.e. how to integrate them with old standards, etc.**

**These new standards are a significant change from the current ADAAG. The new ADAAG provides a new numbering system, better consistency with California and national model codes, etc.   Significant dimensions and details have been changed.  However, until the DOJ adopts them and provides some technical direction, the old ADAAG is the correct standard. The DOJ projects it may be two (2) years (from July 2004) before the new ADAAG is in place fully.**

**In the meantime we will provide our clients with additional information regarding conflicts between the two ADAAG'S and attempt to provide as clear direction as possible.**

### Construction/Alteration History

The construction history was not researched. To firmly establish which editions of the CBC  (and to confirm ADAAG requirements) the building history should be researched with the local enforcing agency.

We were informed the property is virtually unchanged since 1992 (the effective date of the ADA). As such, we have used the Barrier Removal requirements of the ADA as the applicable access standard.  The current CBC and ADAAG alteration requirements were used as the baseline for determining if barriers are present. If subsequent permit history reveals alterations have taken place, the report conclusions may need to be re-visited.

**Facility Survey**

This is a restaurant with surrounding parking in a three (3) building shopping center. Our comments are as follows:

**Parking**

- There are 78 parking spaces provided, three (3) of which are held out as accessible.  As shown in the chart below (fig 1.1) four (4) spaces are required to be accessible.

**Minimum Number of Accessible Parking Spaces**
ADA Standards for Accessible Design 4.1.2 (5)

| Total Number of Parking spaces Provided (per lot) | Total Minimum Number of Accessible Parking Spaces (60" & 96" aisles) | Van Accessible Parking Spaces with min. 96" wide access aisle | Accessible Parking Spaces with min. 60" wide access aisle |
|---|---|---|---|
| | Column A | | |
| 1 to 25 | 1 | 1 | 0 |
| 26 to 50 | 2 | 1 | 1 |
| 51 to 75 | 3 | 1 | 2 |
| 76 to 100 | 4 | 1 | 3 |
| 101 to 150 | 5 | 1 | 4 |
| 151 to 200 | 6 | 1 | 5 |
| 201 to 300 | 7 | 1 | 6 |
| 301 to 400 | 8 | 1 | 7 |
| 401 to 500 | 9 | 2 | 7 |
| 501 to 1000 | 2% of total parking provided in each lot | 1/8 of Column A* | 7/8 of Column A** |
| 1001 and over | 20 plus 1 for each 100 over 1000 | 1/8 of Column A* | 7/8 of Column A** |

\* one out of every 8 accessible spaces          \*\* 7 out of every 8 accessible parking spaces

*Fig 1.1*

Of the three (3) spaces currently identified as being accessible, these are the non-compliant features to that need to be addressed.



*Fig 1.2*

- This space (fig 1.2) did not provide an access aisle or pole mounted signage. As we discussed in the field, this space could be moved next to the sidewalk (see fig 2.1) and reconfigured per fig 1.5;



*Fig 1.3*

- The space in fig 1.3 does not provide required signage; and has a built-up ramp encroaching into the access aisle. The required 12" "NO PARKING" was not painted in the access aisle as required by the CBC.

  We recommend re-striping the space to move the ramp out of the aisle and providing the required signage;



*Fig 1.4*

- The space in fig 1.4 is missing the required signage and the 12" "NO PARKING" in the access aisle. We recommend providing the required signage;

- The slope may exceed the 2% maximum (in any direction) in some limited areas. While the slope exceeds the 2%, it is in my opinion it is within dimensional tolerances or exceeds the "readily achievable" standard, except where specifically noted in my report. The areas noted in the report need to be addressed, but other minor slope areas are, in my opinion, within permitted dimensional tolerances and industry standards or exceed the "readily achievable" standard.

Title 24 California Code of Regulations (T-24 CCR) and the ADA (section 3.2) permit deviations from stated dimensions based on field conditions and industry standards. The authority to establish and enforce regulations based on reasonable tolerances is listed as follows:

> ***Title 24 CCR - Section 1101B.4 Dimensional Tolerances.*** *All dimensions are subject to conventional building industry tolerances for field conditions.*

In addition, **Part II of T-24 CCR, Section 104.2.1** prescribes the following: "The building official shall have the power to render interpretations of this code and to adopt and enforce rules and supplemental regulations to clarify the application of its provisions." Therefore, the building official is responsible for interpreting what "conventional building industry tolerances" are acceptable.

It is also important to understand that the dimensional tolerances are intended to allow a project to be constructed (not designed) within reasonable tolerances and not be redone at considerable expense when the corrective measures provide little or no additional accessibility for people with disabilities.

Conventional building industry tolerances vary from trade to trade. For instance, a rough framer may use 1/4" +/- as the "dimensional tolerance" when laying out framing. A millwork/cabinet maker may use 1/32", as the industry tolerances are more precise for this trade.

Concrete flatwork and site asphalt are not precision trades. The forming tolerances are in the area of plus or minus 1/8" – 3/8".

It is my opinion, as a licensed General Contractor (since 1978) and an expert in the field of disabled access that the slope is within industry tolerances or exceeds the "readily achievable" standard.

- A tow sign is required for **<u>each</u>** entry/exit to the parking lot should include the following sign;

> *"Unauthorized vehicles in designated accessible spaces not displaying distinguishing placards or license plates issued for persons with disabilities may be towed away at the owner's expense. Towed vehicles may be claimed at _____ or by telephoning_____*
> *"*

The lettering is required to be at least 1" and the sign not less than 17" x 22" in size. Blank spaces must be filled in. *(CBC 1129B.5).* Not all entry/exits were provided with the tow signs.

### Recommendations

- Provide at least four (4) accessible spaces as generally configured in fig 2.1 and as discussed above.



*Fig 1.5*

**Path of Travel**

- As shown in fig 2.1, the path of travel from the parking to the front door uses the illustrated walkway.



*Fig 2.1*

**Entry**



*Fig 2.2*

- The required 10" "smooth and uninterrupted" bottom of the door was not provided. See fig 2.3;



*Fig 2.3*

- There was no ISA sign provided;
- The door effort exceeded the maximum of 5 lbs;
- Compliant hardware was not provided.  See fig 2.4;



*Fig 2.4*

**Recommendations**

- Provide the 10"bottom rail as shown in fig 2.3;
- Provide an ISA;
- Adjust the effort to 5 lbs or less;
- Provide hardware as seen in fig 2.4;

10

*Interior*



*Fig 2.5*



*Fig 3.1*

- The bar/service counter is 42″ high.  The CBC requires 34″ high by 36″ long area in counters built after 1989 (this counter is pre 1989).  While the ADAAG 5.2 requires a 36″ high by 60″ area, it allows a nearby table as mitigation.  Provide a 34″ by 60″ lowered area or nearby compliant bar table as required.

- The tables in the bar were all high (fig 3.1). Provide one accessible table.  See fig A:



Fig A

- The dining room has freestanding tables (fig 3.2) and. 5% of the tables already provide the required clear spaces. No action is required;



*Fig 3.2*

**Restrooms**

There are separate sex restrooms that are entered from the alcove area. Our comments are as follows:

*Alcove/Entry*



*Fig 3.3*

- There is only 38″ between the walls leading to the alcove door (Fig 3.3) and 40″ in the hallway leading to the men's and women's room (44″

required). We propose removing the alcove door and this will also mitigate the width and lack of strike side clearance.  See fig 3.3;



*Fig 3.4*

- The required wall and separate door mounted signs were not provided (see fig 3.4). See fig 3.5 for signage requirements:



*Fig 3.5*

**Women's Room**

- The women's room door effort exceeded 5 lbs;

- The operable part of the towels and the reflective surface of the mirror were too high (40″ maximum permitted).



*Fig 4.1*

- The sink did not provide insulated supply and waste pipes;



*Fig 4.2*

- There were two (2) toilet stalls (fig 4.2).  The accessible stall does not provide side approach as required in the new construction/alteration standards.  As such we suggest the removal of one stall and provide a single accommodation stall.  See fig 4.3;



*Fig 4.3*

The current Stall (fig 4.2) is 39" wide. While new construction/alteration require a 60" wide stall, ADAAG is the operable baseline and it does allow a 48" wide stall in hardship exceptions (see 4.17.3, exception, below).

**4.17.3\* Size and Arrangement.** The size and arrangement of the standard toilet stall shall comply with Fig. 30(a), Standard Stall. Standard toilet stalls with a minimum depth of 56in (1420 mm) (see Fig. 30(a)) shall have wall−mounted water closets. If the depth of a standard toilet stall is increased at least 3 in (75 mm), then a floor−mounted water closet may be used.

Arrangements shown for standard toilet stalls may be reversed to allow either a left– or right–hand approach. Additional stalls shall be provided in conformance with 4.22.4.

> *EXCEPTION: In instances of alteration work where provision of a standard stall (Fig. 30(a)) is technically infeasible or where plumbing code requirements prevent combining existing stalls to provide space, either alternate stall (Fig. 30(b)) may be provided in lieu of the standard stall.*



(b)
Alternate Stalls                    Fig

The facility needs to determine the feasibility of widening the accessible stall to at least meet the ADAAG fig 30b exception above.

**Women's Room Recommendations**

- Reconfigure the two (2) stalls into one (1) stall, if permitted by the local enforcing agency (60" width -fig A). If the local enforcing agency will not permit removing one fixture, provide the alternate ADAAG 30b stall.  Include compliant grab bars, TP dispenser, etc;



Fig A

- Provide compliant accessories at the required height and location;

- Provide insulated pipes. See fig B;



**Fig B**

19

**Men's Room**

The men's room issues were very similar and summarized as follows:

- The entry door did not provide 18″ strikeside clearance on the pull side;

- The operable part of all accessories or dispensers was too high (40″ maximum permitted).  A clear floor approach is required (i.e. seat covers).

- The sink **did** provide required knee space. Pipe insulation was not provided;

- The toilet stall was 39″ wide (fig 4.4);



*Fig 4.4*

- There were no grab bars provided in the toilet stalls;



***Fig 4.5***

- No lowered urinal was provided.

**Men's Room Recommendations**

- Provide an electric assisted opener to mitigate required 18" strike side entry clearance;

- Provide compliant accessories at the required height and location;

- Insulate pipes under the counter;

- See discussion regarding the toilets stalls in Women's Room. The same issues apply;

*Restroom Summary*

We are available to assist your designer or contractor, if desired.

**Report Limitations**

This report was created to provide our best opinion on the required state and federal access requirements for this property.  It does not identify every possible deminimus violation, but focuses on the access barriers we observed and to alert you as to the general requirements of the CBC and ADAAG.

This report does not (and can not) indemnify you from every possible interpretation of these codes or any future access lawsuit brought by a party that disagrees with these opinions or is just wrong in their allegations.

However, we are confident that this report does provide the information, that when implemented, will bring you into substantial compliance with the applicable codes and requirements and provide significant protection against future access problems.

This concludes my report.  Please advise if additional work is required.

Yours truly,

Kim R. Blackseth, ICC, ACD

*State of California Building Standards Commissioner (2006-2007)*
*California Board for Professional Engineer and Land Surveyors (2007)*
*International Conference of Building Officials # 1085694-12*
*Academy Certified Diplomate*
*ICC Certified Accessibility Inspector/Plans Examiner #20112*
*Member of the Western Region Master Builders Association*
*California General Building Contractor # 363311, since 1978*
*Member of the Marin Builders Exchange*

## QUALIFICATIONS

The complexity of the various California Building Codes, Title 24, Americans with Disabilities Act, Fair Housing Act and HCD regulations can be staggering. The research and coordination necessary to advise consumers, employers, business owners, architects, municipalities and the legal community has become a highly specialized task.

My firm, Kim R. Blackseth, Interests has been providing these skills for 16 years. We have nationwide experience and a reputation for timely, accurate work. I bring 18 years of varied corporate, commercial real estate, architectural and building experience to this field.  I was a **Vice President of Corporate Real Estate with Bank of America** for five years.  Previous to that, I was with **Bechtel Corporation** in San Francisco.  During the two years prior to the establishment of Kim R. Blackseth, Interests, I was with **Gensler & Associates**, the nation's largest interior architect, developing their ADA and California Title 24 capabilities.

## AFFILIATIONS

**Governor Schwarzenegger** appointed me to the **California Building Standards Commission (CBSC)** in 2006. The CBSC is responsible for all building code requirements, language and modifications, including the disabled access provisions of the California Building Code. My term as Commissioner ran from 2006 – March 2007.

I was honored by **CALBO (California Building Officials)** in March 2007 with the **Presidents Special Recognition Award** *for "Efforts to Improve Public Safety and Disabled Access for All Californians".*

I am a current member of the State of California's **Accessibility Focus Group for the State Fire Marshall (OSFM)**.  Additionally, I currently serve on **Housing and Community's (HCD) Accessibility Advisory Committee.**

**Governor Schwarzenegger** appointed me to the **California Board for Professional Engineer and Land Surveyors** in June 2007 and I'm a current member.

I am **ICBO (International Conference of Building Officials)** and **International Code Committee (ICC**) certified in Disabled Access Building Code/Accessibility issues. I am certified in Disabled Access /Accessibility issues by the **California State Lottery** (they have a separate access program).

I served on the **Marin County Planning Commission** for 10 years, four years as Chairman.  I was appointed to **the Airport Land Use Commission** in 1984 and the **Board of Building Permit Appeals** in 1982. I have been active in the

disability community for years **as President of the Board of Directors for the MCIL,** a statewide disability organization.

I am **Academy Certified Expert** by the **American Academy of Certified Consultants.** My firm is an avid supporter of **the Miami Project to Cure Paralysis.** The **American Paralysis Association** for distinguished service recognized me in 1989. I was on the **Board of Trustees for Sutter Health Systems,** one of California's largest HMO's, and acted **as Chairman of the Sausalito Handicap Appeals Board.** I have been a licensed **California General Building Contractor** since 1978 and received a **Paralegal certificate from the University of California,** Berkeley in 1996. I am a past board member of **The United Way** and **the American Red Cross.**

I have done disabled access consulting for over 2500 firms. This partial list includes:

| | |
|---|---|
| Bank of America | McDonalds |
| California State Lottery | Emil Villas |
| Applebee's | Golden State Warriors |
| Round Table | Carrows |
| Marriott Corporation | Holiday Inn |
| Hyatt Corp | Quik Stop Stores |
| Sacramento Kings (NBA) | ARCO |
| Macys | City of Chicago |
| Exxon Corp | City of San Francisco |
| 7-11 Corp | Motel 6 |
| Port of Oakland | Clarion Corp |
| Days Inn | Xtra Oil Co. |
| El Torito | JC Penney's |
| Goodwill Industries | Starbucks |
| Century Theatres | UA Theatres |
| Bay Area Rapid Transit (BART) | Southland Corp. |
| Borders, Books & Music | The Gap |
| American Express | Pacific Telephone |
| California State Berkeley | County of Alameda |
| Lucas Films | Haas School of Business |
| Ramada Inns | Burger King |
| National Basketball Assoc. (NBA) | Bayside Common Condo Assn |
| Hertz Corp | Motel 6 |
| Vagabond Inns | Bellevue Club |
| Cal Expo | Waterworld |
| Six Flags Marineworld | Walden Books |
| Cal Pacific Medical Center | El Torito |
| Skates By the Bay | Madonna Inn |
| Buck Center for Research on Aging | Original Joe's |

| | |
|---|---|
| Sierra Pacific Properties | Bedford Properties |
| Shadowbrook | Nation's Hamburgers |
| Bonfare Markets | Circle K Stores |
| Doubletree Inns | City of Escondido |
| City of Fresno | Golden Gate Travelodge |
| Tahoe Seasons Resort | Tahoe City Travelodge |
| Shea Homes | Novato Community Partners |
| Jack in the Box | John Irish Auto Center |
| County of Marin | Stockton School District |
| Save Mart | Mission Ranch Resort |
| Subway Sandwich Stores | Sutter Hospital |
| Water World (Six Flags) | Bedford Properties |
| Kovac Realty | River City Brewery |
| Buttercup Restaurants | Cal Fed Bank |
| Chelsea Motor Inn | Church of Our Savior |
| Citi Bank | Cove Shopping Center |
| Diablo Holdings | Esquire Grill |
| Zuni Restaurant | Evolution Furniture |
| Grandview Investments | Hacienda Del Lago |
| Hayes Valley Condos Assoc. | Packard Foundation |
| Hidden Valley Dance Studios | King Village Shopping Center |
| 369 Broadway | Last Day Saloon |

A partial list of some of the projects I have been involved with include:

- Consultant to the **Irvine Co** on all facets of disabled access in **Multi-family housing development;**

- Consultant to **Infineon Raceway;**

- Consultant to **Lucasfilm's/ILM** on **Skywalker Ranch;**

- Consultant to **Foster's/Beringer Blass** on their entire winery portfolio;

- Consultant to **San Francisco Community College District** on their recent $20 million Title II action;

- Consultant to **Shea Homes** on all facets of disabled access in **Multi-family housing development;**

- Defense Expert for **Mervyn's** in their successful defense of the selective aisle width case;

- Featured speaker at the **US Federal Court's Eastern District Annual Conference,** in Monterey on November 3, 2001;

- Consultant to the **National Park Service** for the new Yosemite Lodge and Camp 4 in **Yosemite Valley**.

- Consultant to **California Attorney General** on a Federal ADA case involving the **Department of Corrections' 15 prison institutions**;

- Defense expert on the **Clint Eastwood** ADA matter in Carmel.

- Featured speaker to **4000 Subway Franchisee's** at their annual conference in Las Vegas on August 2, 2001;

- Featured speaker at the **Associate of Defense Counsels District Annual Conference,** in San Francisco;

- Disabled Access Consultant to the Skidmore, Owings and Merrill design teams on the **proposed Pier 32 Cruise Terminal in San Francisco.**

- Expert to **Francis Ford Coppola's** Coppola-Niebaum Winery;

- Plaintiff's experts on a personal injury case with ADA and disabled access elements. The **award exceeded $2.1 million dollars.**

- Expert to the **Pebble Beach Company's** properties (including Pebble Beach, Del Monte, Spyglass and Spanish Bay hotel and golf properties;

- Worked as expert in the **BART (Bay Area Rapid Transit)** on their recent Federal Class Action suit;

- Assisted the **Hertz Corp**. as an expert on their recent Federal Class Action access suit;

- Helping the **NBA Golden State Warriors** and **the Oakland/ Alameda County Coliseum Complex** identify and solve disabled access problems with their facility;

- I've been certified by the **California State Lottery** to work with their 19,200 sites to achieve a minimum level of access;

- Helping the **NBA Sacramento King's** and **the ARCO Arena Complex** identify and solve disabled access problems with their facility;

- Completed a one year study on the effectiveness of **the City and County of San Francisco's Building Departments'** in enforcing the State Disabled Access Regulations. The **Northern District Federal Court** ordered this study based on litigation from community groups.

- Worked as expert for **MUNI (San Francisco Municipal Railway)** on their recent Federal Class Action suit;

- Study completed for **Fair Housing of Marin** on 20 residential sales offices;

- Assisted the **City of Chicago's Convention Complex** called **Metropolitan Pier and Exposition** with disabled access elements.

- Recent work with the **California Attorney Generals Office** on a whole range of disabled / ADA issues.

- Consultant to the **Shea Homes Co project at Hamilton Field** in Novato, CA;

- Instructor with **UC Berkeley's Extension Program,** I teach a class on **Universal Design and the ADA**.

## LEGAL WORK

I have been Plaintiff's or Defense expert on over 500 cases. On a number of cases (about five) I was expert for both parties, by agreement.

## MUNICIPAL WORK

I also provide on-call-consulting services to many municipalities, including the Cities of Riverside, San Rafael, County of Napa, City of American Canyon, Mill Valley, Eureka, Clear Lake, Fresno, Sausalito, Corte Madera, Ross, County of Amador and the County of Marin. These services include, plan checking, hardship request analysis and a whole range of disability issues.

## FEE SCHEDULE

My services are $215.00 per hour for general consulting and $295.00 for depositions and sworn testimony.

### Cases Where Depositions Or Testimony Was Required

- Hawkins v. Campus Mini-Mart (Deposition and Trial)
- Haney v. Treat (Deposition and Trial)
- James v. JC Penney's (Deposition and Trial)
- Dowling v. Spinnakers  (Deposition and Trial)
- Perkins v. Chicago Metropolitan
- Pickern v. UniLab
- D'Lil v. Ranch House
- Stickel v. Farmers Table
- Callen v. Macys West
- Lieber v. Cal Pacific Med Center
- McWorter v. Dalton (Deposition and Trial)
- Hankins v. El Torito
- Jenkins v. Holiday Inn (Deposition and Trial)
- Zum Brunnan v. Mission Ranch (Deposition and Trial)
- Lentini v. City of Escondido
- Wilson v. Polaris
- Turner v City of Fresno
- Graham v Westwood Village HOA
- Pickern v Tri Counties Bank;
- Doran v. Rendzvous Café;
- Moreno v Subway (Deposition and Trial)
- Doran v. Holiday Quality Foods
- Doran v. Oroville Hospital
- Martin v. Cavalier
- CDRA v. Mervyn's
- McMahon v. Cinema West (Deposition and Trial)
- Wilson v. Nimbus Winery (Deposition and Trial)
- Martin v. Water St Grille
- Marcy, Darcy-Key v Fortuna Hotel
- Martin v. Water Street Grill
- Feezor v. Starbucks;
- Molski v. Harmony;
- Madden v Amir's Pasta
- Ordeana v. Kaiser Permanente
- Wilson v. Pier 1
- Chapman v. Pier 1
- Cherry v. SF City College
- Dodson v. Dollar Tree (Trial)
- Wilson v. Johnny Carino's (Trial)
- Wilson v. Murillo's;
- Antonetti v. Chipolte;
- Lonberg v. City of Riverside (Trial only)

- Fitzsimmons v Novato Motel;
- Oliver v KFC;
- Friedman v. Tavistock;

## Publications or Presentations

- Presentation to County of Amador Public works and Building Officials on ADA and CBC requirements;

- Presentation to 150 nationwide district managers for Ross Stores on Access Requirements in a Retail Environment, September, 2005;

- I teach a class a UC Berkeley on Universal Design and Disabled Access; (Fall 2001) (Spring 2002);

- California Association of Realtors. Seminar on ADA/CBC requirements for apartments in January 2005;

- Speaker at the March 2005 American Society of Civil Engineers *(ASCE) redwood Chapter on ADA/CBC in Public Rights of Ways;

- Speaker at Federal Court's Eastern District Conference, Monterey, 2002

- Speaker at 2002 Association of Defense Counsel of Northern California and Nevada

- Speaker at 2002 Burger King Franchisee's Association (Northern California and Nevada)

- Speaker at the NAASF annual meeting in Las Vegas on Aug 2, 2001;

- "Access is good for Business:" Orange Co Business Owners; (presentation)

- "ADA and supported employment" Integrated Resources; (presentation)

- "Facility Obligations" Sonoma Co Superintendent of Schools; (presentation)

- "The ADA of 1990" AIA, Marin; (presentation)

- "ADA and Pacific Telephone" Pacific Bell Managers; (presentation)

- Marin County Codes Advisory Board; (presentation)

- Burger King Convention, Nashville; (presentation)

- California Restaurant Association: (presentation)

  Sacramento Chapter

  Santa Clara Chapter

  San Francisco Chapter

  Monterey Chapter

  Santa Cruz Chapter

- California Hotel and Motel Association; (presentation)

- Seminar for Business and other Interested Parties, Monterey; (presentation)

- And many other community and industry groups;

**Personal Disability Knowledge**

I am also a disabled individual.  I'm a C-5 quadriplegic (since 1979) and use an electric wheelchair for day-to-day ambulation and a pushchair on special occasions.

This unique combination of expertise in the field of disabled access and my daily observations and practical experience as a disabled individual make a rare and very useful mixture of technical and real world knowledge for my clients and the court.

**Basis of Expert Testimony**

The facts contained are within my personal knowledge, and I can and will testify competently to them if called to do so.  The following opinions are based on my experience with providing program and physical facilities access for public and private entities.